IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

SHEILA M. LOZADA-LEBRÓN,

Plaintiff,

v.

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

Defendant.

CIVIL NO. 21-1511 (CVR)

## OPINION AND ORDER

## INTRODUCTION

On October 20, 2021, Plaintiff Sheila M. Lozada-Lebrón ("Plaintiff") filed the present action to obtain judicial review of the final decision of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security ("Commissioner" or "Defendant") who denied her application for disability benefits. (Docket No. 3).[1] On October 22, 2021, after Plaintiff consented to proceed before a Magistrate Judge, the presiding District Judge referred this case to the undersigned for all further proceedings, including the entry of judgment.[2] (Docket Nos. 8 and 9).

On February 22, 2022, the Commissioner answered the Complaint and thereafter filed a copy of the administrative record. (Docket Nos. 12 and 13). On April 4, 2022, Plaintiff filed her memorandum of law (Docket No. 17). On August 8, 2022, the Commissioner filed her memorandum of law. (Docket No. 22).

---

[1] 42 U.S.C. Sec. 405(g), provides for judicial review of the final decision of the Commissioner. "... [t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment without remanding the cause for rehearing". Section 205(g).

[2] The government has already provided a general consent to proceed before a Magistrate Judge in all Social Security cases. Title 28 U.S.C. Section 636(b)(1)(A), (c)(1) and (c)(2); Fed. R. Civil P. 73(a).

<u>Sheila M. Lozada-Lebrón v. Social Security Administration</u>
Opinion and Order
Civil No. 21-1511 (CVR)
Page No. 2

The Court AFFIRMS the Commissioner's decision after a careful review of the entire record.

## ADMINISTRATIVE AND PROCEDURAL HISTORY

Plaintiff, a former nurses' aide, filed an application for disability benefits with an alleged onset date of disability of February 18, 2016. The application was initially denied, as was the reconsideration. (Tr. pp. 731-749 and 751-769). Plaintiff then requested an administrative hearing which was held on May 21, 2019, and a supplemental hearing was held on October 25, 2019. Plaintiff was present with a representative and testified regarding her alleged disabilities. (Tr. pp. 96-131 and 64-95). Testimonies were also heard from medical expert Dr. Annette de Paz ("Dr. de Paz") and vocational expert Pedro Román ("VE Román") at the initial hearing and from medical expert Dr. Jorge Hernández-Denton ("Dr. Hernández-Denton") and vocational expert Ariel Cintrón Antommarchi, Ph.D. ("VE Cintrón") at the supplemental hearing regarding the kind of jobs that Plaintiff could be able to perform and that were available in the national economy. <u>Id</u>.

On November 8, 2019, the presiding Administrative Law Judge ("ALJ") issued an opinion, finding Plaintiff was not disabled from the onset date of February 18, 2016, through the last date insured, March 31, 2019. (Tr. pp. 40-55).

The ALJ made the following findings of fact as part of his fact-finding responsibilities:

1.     Plaintiff met the insured status requirements of the Social Security Act on March 31, 2019.

2.   Plaintiff did not engage in any substantial gainful activity since her alleged onset date of February 18, 2016, through her date last insured of March 31, 2019.

3.   Plaintiff had the following severe impairments: systemic lupus erythematosus, pulmonary hypertension, inflammatory arthritis, hypercoagulation disease, deep venous thrombosis, asthma, and major depressive disorder. (20 CFR 404.1520(c)).

4.   Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR part 404, Subpart P, Appendix 1.

5.   After careful consideration of the entire record, the ALJ found that, since the alleged onset date of February 18, 2016, through March 31, 2019, Plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 CFR 404.1567 (a) except that she could lift, carry, push, and pull 10 pounds occasionally and less than 10 pounds frequently. Plaintiff could sit for 4 hours in an 8-hour workday; and stand and walk for 2 hours each in an 8-hour workday.  She had the ability to frequently handle, finger and feel with bilateral upper extremities. Plaintiff had the ability to climb ramps and stairs occasionally, never climb ladders, ropes, or scaffolds, balance frequently, and occasionally stoop, kneel, crouch, and crawl. She could never work in unprotected heights, occasionally with moving mechanical parts, occasionally operating a motor vehicle,

occasionally in humidity and wetness, occasionally in dust, odors, fumes, and pulmonary irritant, and occasionally in extremes of temperature. Mentally, plaintiff had the ability to perform simple, routine and repetitive tasks, to use her judgment to perform simple work-related decisions, to interact with supervisors and coworkers frequently, and occasionally with the public, and to deal with changes in the work-setting related to simple work-related decisions. She should avoid tasks requiring the use of cutting tools or sharp objects.

6.    Plaintiff was unable to perform any past relevant work.

7.    Plaintiff was born on January 30, 1989, and was 30 years old on the date last insured, which is defined as a younger individual, age 18-49.

8.    Plaintiff is unable to communicate in English.

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding of "not disabled", whether or not Plaintiff had transferrable job skills.

10.    There were jobs that existed in significant numbers in the national economy that she could perform considering Plaintiff's age, education, work experience, and RFC.

11.    Plaintiff was not under a disability, as defined in the Social Security Act, at any time from February 18, 2016, the alleged onset date, through March 31, 2019, the date last insured.

<u>Sheila M. Lozada-Lebrón v. Social Security Administration</u>
Opinion and Order
Civil No. 21-1511 (CVR)
Page No. 5

The Appeals Council subsequently granted Plaintiff's request for review. The Appeals Council issued its own decision on September 22, 2021, adopting the ALJ's findings at steps 1-4. As to step 5, the Appeals Council opined that Plaintiff retained the RFC to perform the occupations of addresser and lens inserter prior to her date last insured. Therefore, Plaintiff was not entitled to disability insurance benefits. The Appeals Council's decision is considered the final decision of the Commissioner, subject to review by this Court. (Tr. pp. 7-11).

Plaintiff objects the final decision denying her disability benefits, alleging the ALJ erred in adequately assessing whether she met the criteria for Listing 14.02 Systematic Lupus Erythematosus. Plaintiff also avers that the ALJ failed in the evaluation for her mental RFC and failed to apply the treating physician rule. Thirdly, Plaintiff contends that the ALJ erred in resolving contradictory VE testimony.

The Commissioner disagrees and posits that the ALJ reasonably considered and assessed Plaintiff's lupus. The Commissioner also asserts that the ALJ correctly evaluated Plaintiff's mental condition and her treating physician's opinion and correctly determined Plaintiff's RFC. The Commissioner also claims that the Appeals Council appropriately assessed the VE's testimony and argues that the ALJ's ultimate determination that Plaintiff was not disabled was supported by substantial evidence and should be affirmed.

## STANDARD

To establish entitlement to disability benefits, the burden is on the claimant to prove disability within the meaning of the Social Security Act. <u>See</u> <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146-47, n. 5 (1987). It is well settled law that a claimant is disabled under the

Act if he/she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a).  A claimant is unable to engage in any substantial gainful activity when the claimant is not only unable to do his/her previous work but, considering age, education, and work experience, cannot engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he/she lives, or whether a specific job vacancy exists, or whether he/she would be hired if he/she applied for work. 42 U.S.C. § 423(d)(2)(a).

To determine whether a claimant is disabled, all the evidence in the record must be considered.  20 C.F.R. § 404.1520(a).  A five-step sequential evaluation process must be applied in making a final determination as to whether or not a claimant is disabled. 20 C.F.R. § 404.1520; see Bowen, 482 U.S. at 140-42; Goodermote v. Sec'y of Health & Human Servs., 690 F.2d 5, 6-7 (1st Cir. 1982).  At step one, the ALJ determines whether the claimant is engaged in "substantial gainful activity."  If he/she is, disability benefits are denied.  § 404.1520(b).  If not, the decision-maker proceeds to step two, where he or she must determine whether the claimant has a medically severe impairment or combination of impairments.  See § 404.1520(c).  If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment or combination of impairments is severe, the evaluation proceeds to the third step to determine whether the impairment or combination of

impairments is equivalent to one of several listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. § 404.1520(d); 20 C.F.R. pt. 404, subpt. P, App. 1.  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step through which the ALJ determines whether the impairment prevents the claimant from performing the work he/she has performed in the past.  If the claimant can perform his/her previous work, he/she is not disabled.  § 404.1520(e).

Once the ALJ determines that the claimant cannot perform his or her former kind of work, then the fifth and final step of the process demands a determination of whether claimant is able to perform other work in the national economy in view of the RFC, as well as age, education, and work experience.  The claimant would be entitled to disability benefits only if he/she is not able to perform any other work whatsoever. §§ 404.1520(f).

In the case at bar, the ALJ determined at step four that Plaintiff could not return to her past work, and at step five that considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could perform.  Specifically, the ALJ found that Plaintiff could be an addresser (clerical) (DOT Code 209.587-010); a document preparer (DOT Code 249.587-018); and a lens inserter (DOT Code 713.587-026), which are all sedentary and unskilled work (SVP 2). The ALJ then concluded Plaintiff was not disabled.

The Appeals Council adopted the ALJ's opinion, except that it found that Plaintiff could only be an addresser and a lens inserter, but not a document preparer.

## LEGAL ANALYSIS

The Court's review in this type of case is limited to determine whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence.  See Manso-Pizarro v. Sec'y of Health and Human Servs, 76 F.3d 15, 16 (1st Cir. 1996).  The ALJ's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts.  Nguyen v. Chater, 172 F.3d 31 (1st Cir. 1999).  Substantial evidence is "more than a mere scintilla and such, as a reasonable mind might accept as adequate to support a conclusion".  Richardson v. Perales, 402 U.S. 389 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197 (1938)).  The court will set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on a legal error.  See Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001); Rodríguez v. Sec'y of Health and Human Servs, 647 F.2d 218, 222 (1st Cir. 1981).

Plaintiff's first allegation is that the ALJ erred in adequately assessing if Plaintiff met the criteria for Listing 14.02 Systematic Lupus Erythematosus.  The Court finds no error in the ALJ's determination.

Lupus is a chronic inflammatory disease that can affect any organ or body system and can result in severe fatigue, malaise, anemia, mood disorders, anxiety, inflammatory arthritis, and severe pain. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 14.02(1)(a). 20 C.F.R. § 404, app. 1, § 14.02(A) states that lupus must be documented with one of the following: joint, muscle, ocular, respiratory, cardiovascular, digestive, renal, skin, neurological involvement, or mental involvement. 20 C.F.R. § 404, app. 1, § 14.02(B)

states that lupus can be documented by the lesser involvement of two or more organs/body systems listed in 20 C.F.R. § 404, app. 1, § 14.02(A), with significant, documented, constitutional symptoms and signs of severe fatigue, fever, malaise, and weight loss. At least one of the organs/body systems must be involved to at least a moderate level of severity. 20 C.F.R. § 404, app. 1; Griffith v. Barnhart, No. 00 CV 7302, 2003 WL 355590, at *1 (N.D. Ill. Feb. 14, 2003).

Plaintiff's record does not show that she had a flare up or that at least one of her organs was at a moderate level of severity. All state agency medical consultants determined that Plaintiff's lupus neither met nor medically equaled any listed impairment. (Tr. p. 744-47 and 764-67). Expert Dr. Hernández-Denton also concluded that Plaintiff's lupus did not meet or medically equaled any listed impairment. (Tr. p. 83). The record lacks evidence that Plaintiff's symptoms met any of the required elements, and the Appeals Council therefore adopted the ALJ's correct determination that Plaintiff's lupus did not fit into the listed impairment category. (Tr. p. 8, 43 and 46-47).

The court reminds Plaintiff that it is her burden to establish that her impairments were severe enough to satisfy the criteria of a listed impairment. Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (to match any listed impairment, claimant must satisfy all the specified medical criteria . . . even a severe impairment will not qualify if it meets only some, but not all, of the required medical criteria). Plaintiff failed to demonstrate that her lupus was of listings-level severity because the record demonstrates that her lupus was stable with prescription medication. (Tr. p. 47). For this reason, the Court finds the conclusion that Plaintiff's lupus neither met nor medically equaled any listed impairment

is buttressed by the record, and concludes Plaintiff's first argument unavailing.

Plaintiff's second contention is that the ALJ failed in his evaluation of her RFC regarding her mental condition and failed to apply the treating physician rule. The Court finds that the ALJ correctly assessed Plaintiff's mental RFC.

As is well known, to craft an RFC, an ALJ is required to consider medical opinions along with all other relevant evidence in a claimant's record. Ledoux v. Acting Comm'r, Soc. Sec. Admin., Civil No. 17-707-JD, 2018 WL 2932732, at *4 (D.N.H. June 12, 2018). While an ALJ will consider all medical opinions of record regarding a claimant's functioning, it is ultimately the ALJ who determines the claimant's RFC based on all the evidence in the medical record, including treating and consulting physicians. 20 C.F.R. §§ 416.927(e)(2), 416.945(a), 416.946(c); SSR 96-5p, 1996 WL 374183, at *2. In evaluating whether a claimant satisfies the disability criteria, the Commissioner's job is to evaluate the claimant's "ability to work on a regular and continuing basis." SSR 96-8p (S.S.A. July 2, 1996); see also Lester v. Chater, 81 F.3d 821 (9th Cir. 1995).

When claiming mental impairment, the ALJ must examine the four broad functional areas, to wit: activities of daily living; social functioning; concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. (Tr. p. 18; 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526). To satisfy the criteria of Listing 12.04 (Affective Disorders), commonly known as the "paragraph B" criteria and meet one of the listed impairments, a claimant must have one extreme or two marked restrictions in the previously mentioned broad areas of functioning. The ALJ found that Plaintiff had a moderate depressive disorder and included these mental limitations in the

RFC. (Tr. p. 44-45, 52).  There was no other evidence in the record that indicated that Plaintiff had a greater mental impairment.

Plaintiffs' allegations that the ALJ erred in not assigning the treating physician controlling weight likewise finds no support on this record.  A treating physician's opinion is controlling if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." See Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018).  Treating physicians' opinions are ordinarily accorded more deference in Social Security disability proceedings because "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 416.927(c)(2). Regulations also state that "the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion.  When the treating source has seen you several times and long enough to have obtained a longitudinal picture of your impairment, we will give the medical source's medical opinion more weight than we would give it if it were from a non-treating source".  20 C.F.R. § 404.1527(c)(2)(i).

For this reason, the ALJ will give controlling weight to the opinions of treating physicians if they are well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record.

Berríos-Vélez v. Barnhart, 402 F. Supp. 2d 386, 391 (D.P.R. 2005).  Generally, the more consistent an opinion is with the record as a whole, the more weight is given to it. 20 C.F.R. § 404.1527(c)(4); Bouvier v. Astrue, 923 F.Supp.2d 336, 347–48 (D.R.I. 2013); Agostini-Cisco v. Comm'r of Soc. Sec., 31 F. Supp. 3d 342, 348 (D.P.R. 2014).  This weighing of the evidence is a responsibility that has always been entrusted to the ALJ, and it is a task which falls squarely within the ALJ's responsibilities.

The ALJ was also in the unique position to personally witness Plaintiff's demeanor at the hearing, thus allowing him an important opportunity to assess the consistency of her answers.  Rodríguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (he [the ALJ] found some of the plaintiff's statements at the hearing inconsistent with others she had made and gave her testimony "low credibility").  The Court of Appeals of the First Circuit has recognized that "[i]t is the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence." Irlanda Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991); see also Tremblay v. Sec'y of Health and Human Servs., 676 F.2d 11, 12 (1st Cir. 1982).  It has always been the province of the ALJ and not this Court to assess issues of credibility.  See Valiquette v. Astrue, 498 F. Supp. 2d 424 (2007) ("[i]ssues of credibility and the drawing of permissible inference from evidentiary facts are the prime responsibility of the Secretary."); Rodríguez v. Sec'y of Health & Hum. Servs., 647 F.2d 218, 222 (1st Cir. 1981) (quoting Rodríguez v. Celebrezze, 349 F.2d 494, 496 (1st Cir. 1965)) (internal quotations omitted). An ALJ is thus not required to accept subjective complaints without question, but rather, may exercise discretion in weighing the testimony considering other evidence of record.

Sheila M. Lozada-Lebrón v. Social Security Administration
Opinion and Order
Civil No. 21-1511 (CVR)
Page No. 13

See Irlanda Ortiz, 955 F.2d at 769 (stating that the ALJ's credibility determination is entitled to deference).

The ALJ in this case found that Plaintiff's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms, but he determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical record. (Tr. p. 46).

A review of the record shows that the ALJ took into consideration Plaintiff's treating physician records and opinions. For example, the ALJ specifically mentions Dr. Anaida Nadal's treatment of Plaintiff's rheumatoid arthritis. (Tr. p. 47-48). The ALJ also assigned just partial weight to the state medical consultants regarding Plaintiff's physical RFC and even went beyond their conclusions, assigning a more restrictive RFC than what they had found. (Tr. p. 50).

As to Plaintiff's mental condition, the ALJ did assign great weight to Dr. de Paz, medical expert since her opinion was supported by the record as a whole. Dr. de Paz found that Plaintiff had received treatment for a major depressive disorder, recurrent, moderate and that it did not meet or equaled a listed impairment. (Tr. p. 50-51). The ALJ determined that Plaintiff's mental limitations were in line with moderate depressive disorder, as Dr. de Paz had concluded. While the ALJ did generalize Plaintiff's treating doctors' progress notes, he noted that the record did not contain any opinion from a treating physician specifying that Plaintiff was disabled or that her mental condition was as incapacitating as alleged. Little weight was given to the state consultants as to

Plaintiff's mental disorder, who opined it was not severe. (Tr. p. 51-52). For both of Plaintiff's mental and physical RFC, the Court must note that the ALJ gave Plaintiff a more restrictive RFC at all times and mentioned that it was more beneficial to Plaintiff. (Tr. p. 52). These RFC determinations were then adopted by the Appeals Council. (Tr. p. 7-11). Thus, the Court finds no error in the ALJ's RFC determination which properly considered all medical evidence of record.

Plaintiff's last allegation is that the ALJ erred in resolving contradictory VE testimony. To this effect, the Appeals Council issued its own decision. See, 20 C.F.R. § 404.981 (the Appeals Council's decision is the Commissioner's final decision). During the initial hearing, VE Román concluded that Plaintiff was unable to perform any jobs based on the hypothetical factors given to him at that time. During the second hearing, the ALJ sharpened his hypotheticals, and aided by VE Cintrón, concluded that Plaintiff was able to perform three jobs, to wit, document preparer, addresses and lens inserter. On review, the Appeals Council found Plaintiff unable to perform one of those jobs, document preparer, because it involved using sharp objects. It found VE Cintrón's testimony as to the remaining occupations of addresser and lens inserter persuasive because it was consistent both with the DOT and Plaintiff's RFC. (Tr. p. 9). The Appeals Council then determined that, based on Plaintiff's RFC and vocational factors, as well as VE Cintrón's testimony, Plaintiff retained the capacity to perform the occupations of addresser and lens inserter. (Tr. p. 9). It is evident that the Appeals Council's decision specifically addressed the contradictory testimony offered during the hearing. Therefore, Plaintiff's allegation is without merit.

<u>Sheila M. Lozada-Lebrón v. Social Security Administration</u>
Opinion and Order
Civil No. 21-1511 (CVR)
Page No. 15

In view of the above, the Court finds no error in the Commissioner's conclusion that Plaintiff was not disabled from the alleged onset date of February 18, 2016, through the date last insured, March 31, 2019, and finds such a conclusion is supported by substantial evidence in the record as a whole.

**CONCLUSION**

For the reasons above discussed, the Court finds there is substantial evidence on the record in support of the Commissioner's decision. Consequently, the Commissioner's decision is AFFIRMED.

Judgment is to be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, on this 29th day of November 2022.

S/CAMILLE L. VELEZ-RIVE
CAMILLE L. VELEZ RIVE
UNITED STATES MAGISTRATE JUDGE